IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-CV-1393-NYW-MJW

LINDA F. MORTON, *et al.,*

      Plaintiffs,

vs.

TRANSCEND SERVICES, INC.,

      Defendant.

---

### JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND RELEASE

---

Plaintiffs Linda F. Morton ("Morton"), Linda Mathias ("Mathias"), and Elizabeth Sennett ("Sennett") and Defendant Transcend Services, Inc. ("Transcend") (collectively, "the Parties") jointly request the Court to approve the Parties' settlement in the above-captioned matter. Because Plaintiffs' action arises under the Fair Labor Standards Act ("FLSA"), the Parties' settlement must be approved by this Court. The Parties' executed the Confidential Settlement Agreements and General Releases (the "Settlement Agreements"). The Settlement Agreement signed by Plaintiff Morton is attached as Exhibit A, the Settlement Agreement signed by Plaintiff Mathias is attached as Exhibit B, and the Settlement Agreement signed by Plaintiff Sennett is attached as Exhibit C.

## I.    <u>BACKGROUND</u>

This action arose from a decertified putative collective action filed in the Northern District of Illinois, *Cosentino v. Transcend Servs. Inc.*, N.D. Ill. Case No. 1:12-cv-03627. Plaintiff Morton filed her opt-in notice on May 31, 2013. Plaintiff Sennett filed her opt-in notice on June 25, 2013. Plaintiff Mathias was one of the original named plaintiffs in the *Cosentino* action. On September 25, 2014, the Court granted Defendant's Motion for Decertification, causing Morton's and Sennett's claims in that case to be dismissed. Plaintiff Mathias' claims were later severed from the *Cosentino* action.

The claims in the original collective action were substantially similar to those raised individually by the Plaintiffs in their Complaint, which was filed with this Court on June 30, 2015. (Dkt. #1). Specifically, Plaintiffs alleged that they worked more hours as medical transcriptionists than they were paid for, resulting in unpaid minimum wage payments. Transcend answered the Complaint as to Plaintiffs Morton and Sennett on September 15, 2015, denying the substance of Plaintiffs' claims and asserting affirmative defenses. Transcend moved to dismiss claims as to Plaintiff Mathias on September 15, 2015 on the grounds that Mathias' claims were time barred. The parties agreed to settle Mathias' claims before the court ruled on Transcend's motion to dismiss.

Actions to recover unpaid minimum wages under the FLSA must generally be brought no more than two years after the cause of action accrues. *See* 29 U.S.C. § 255(a). The limitations period is extended to three years only if the plaintiff can show that the violation was "willful," or in other words, that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *See* 29 U.S.C. § 255(a). Applying the three-year statute of limitations (which Transcend has disputed), and accounting for tolling of the statute of limitations period while Plaintiffs were putative opt-ins in *Cosentino*, Plaintiffs claims encompass workweeks during the following periods:

Morton: September 2010 through January 15, 2012.

Sennett: September 2011 through December 2012.

Mathias: June 2012 through August 2012.[1]

Counsel for the Parties have engaged in settlement discussions regarding Plaintiffs' claims. The Parties also exchanged documents and information regarding Plaintiffs' claims and Transcend's defenses, including Plaintiffs' computer time records and Transcend's policies, which

---

[1] As Transcend indicated in its motion to dismiss briefing, Transcend denies that plaintiff Mathias is entitled any tenure weeks under the FLSA. Nevertheless, in the interest of avoiding the risk of litigation, Transcend has agreed to settle her claims based on the tenure weeks that would have been available to her had she not voluntarily dismissed her prior Complaint.

direct transcriptionists not to work off the clock and contain a reporting mechanism if transcriptionists are asked to do so. The Parties agreed that discovery regarding Plaintiffs obtained in *Cosentino* could be used in this matter. The Parties ultimately reached resolution of Plaintiffs' claims, as memorialized in Exhibits A, B, and C.

## II.   **DISCUSSION**

Because Plaintiffs' action includes an FLSA claim, a private settlement of this action requires Court approval. There are two ways in which claims under the FLSA may be settled and released by employees. First, Section 216(c) of the FLSA allows employees to settle and waive their claims if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c). Second, in the context of a private lawsuit brought by an employee against an employer under Section 216(b) of the FLSA, the employee may settle and release an FLSA claim if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement. *Blocklin v. Black Pepper Pho, LLC*, 14-cv-1252-WJM-KLM, 2014 WL 6819894, at *1-2 (D. Colo. Dec. 3, 2014) *citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–1353 (11th Cir. 1982).

Before approving a settlement, a district court must scrutinize the settlement to ensure that it is a "fair and reasonable resolution [sic] of a bona fide dispute over FLSA provisions." *Pliego v. Los Arcos Mexican Restaurants*, 313 F.R.D. 117, 128 (D. Colo. 2016) *quoting Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–1353 (11th Cir. 1982)). In order for the court to determine whether a bona fide dispute exists, the parties must present: "(1) a description of the nature of the dispute; (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties

dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Nicholas v. Double J Disposal, Inc.*, No. 14-cv-01158-PAB-GPG, 2016 WL 559185 (D. Colo. Feb, 12, 2016).  In addition, the Tenth Circuit considers several factors when evaluating whether a settlement is fair, adequate and reasonable: (1) was the settlement achieved in an adversarial context; (2) were the plaintiffs represented by attorneys who can protect their rights; (3) does the settlement reflect a reasonable compromise over issues that are actually in dispute; and (4) is the settlement fair? *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F. 3d 1180, 1188 (10th Cir. 2002).

Furthermore, the FLSA provides that courts may, in their sound discretion, "award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." 29 U.S.C. § 260; *Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1183, 1193 (N.D. Okla. 2006); *see also Patterson v. Acad. Fire Prot., Inc.*, No. 3:13-cv-87-J-34JBT, 2014 WL 169812, at *6 (M.D. Fla. Jan. 8, 2014) (adopting report and recommendation to approve FLSA settlement agreement providing no liquidated damages in light of parties' dispute regarding whether plaintiff was entitled to such damages).  This provision applies "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260; *see also Doty v. Elias*, 733 F. 2d 720, 725 (10th Cir. 1984) (the good faith defense imposes upon an employer a burden  of proving that "he acted in good faith and the he had reasonable grounds for believing that his actions did not violate the act.").  If the employer cannot prove good faith, the liquidated damages amount shall be equal to the employee's unpaid minimum wages or unpaid overtime compensation.  29 U.S.C. § 216(b).

Here, the Defendant has asserted the "good faith" defense, among numerous other defenses. Thus, reliance upon section 260 for purposes of settlement would be appropriate. Particularly in light of the numerous disputes in this lawsuit, and rulings on key legal claims, the Court should approve the Parties' Settlement Agreement because it is both fair and a reasonable compromise of the Plaintiffs' disputed claims against the Defendant.

The settlement in this case involves a situation in which the Court may approve the Parties' settlement to resolve and release Plaintiffs' FLSA claims against Transcend. The proposed settlement arises out of a bona fide dispute. Specifically, plaintiffs are former medical transcriptionists who worked for Transcend and allege that they worked more hours than they were paid for, resulting in unpaid minimum wage payments. Transcend maintains that it properly paid plaintiffs based on the hours plaintiffs reported, along with Transcend's policies, which direct transcriptionists not to work off the clock and contain a reporting mechanism if transcriptionists are asked to do so

Furthermore, the settlement negotiated and reached by the Parties reflects a reasonable compromise of the disputed issues. During the litigation and settlement of this action, the Parties were represented by experienced counsel and reached their agreement after lengthy negotiations. Plaintiffs and their counsel discussed the alleged hours, tenure weeks and pay rate, and formulated their own proposed settlement figures. Transcend pointed to Plaintiffs' time records, the time they had recorded, and the records of their production during the disputed weeks. Based upon their respective estimates of Plaintiffs' underlying claims and the value of their relative strengths and weaknesses, the Parties negotiated a settlement amount of $23,300.00,[2] separated as follows:

---

[2] The total settlement amount in this case ($23,300 total) is requested as part of approval of a global

5

### A. Plaintiffs' Awards and Possible Recovery

1. Plaintiff Linda F. Morton

Plaintiff Morton will receive $4,500 for allegedly unpaid compensation and $4,500 in liquidated damages. The total amount paid to Plaintiff is $9,000. The Parties believe these amounts reflect a fair and reasonable resolution of this dispute. In particular, Plaintiff Morton estimated working approximately 65 hours per week during her time at Transcend, causing total unpaid overtime wages of approximately $24,000. Discovery revealed, however, that Morton's hours worked and alleged damages during the relevant time period were substantially lower than initially estimated. Accordingly, the $9,000 she will receive pursuant to her Settlement Agreement more than likely exceeds the Parties' respective calculations of her damages.

2. Plaintiff Linda Mathias

Plaintiff Mathias will receive $4,500 for allegedly unpaid compensation and $4,500 in liquidated damages. The total amount paid to Plaintiff is $9,000. The Parties believe these amounts reflect a fair and reasonable resolution of this dispute. Indeed, the $9,000 she will receive pursuant to the settlement agreement exceeds Defendant's calculation of its exposure even if Plaintiff's claims were assumed to be true, in particular because Transcend calculated that Mathias could be entitled to no relief because her claims were time barred.

3. Plaintiff Elizabeth Sennett

Plaintiff Sennett will receive $2,500 for allegedly unpaid compensation and $2,500 in liquidated damages. The total amount paid to Plaintiff is $5,000. The Parties believe these amounts reflect a fair and reasonable resolution of this dispute. In particular, Plaintiff Sennett estimated

_____

settlement entered between Defendant, Plaintiff's counsel, and pending medical transcriptionists' claims. The global settlement resolves the instant lawsuit and ten similar lawsuits against Transcend throughout the United States.

working approximately 54 hours per week during her time at Transcend, causing total unpaid overtime wages of approximately $18,000.  Discovery revealed, however, that Sennett's hours worked and alleged damages during the relevant time period were substantially lower than initially estimated.  Accordingly, the $5,000 she will receive pursuant to her Settlement Agreement more than likely exceeds the Parties' respective calculations of her damages.

B.    **Attorneys' Fees and Costs**

Plaintiffs attach an itemization of their Attorney's Fees as Exhibit D.  Plaintiffs' counsel effectively began representing Plaintiffs when they filed their Opt-in Notices to the original *Transcend* Collective Action. *Cosentino v. Transcend Servs. Inc.*, N.D. Ill. Case No. 1:12-cv-03627.  The Parties conducted extensive discovery in the Collective Action, which consisted of 35 depositions.  The Parties agreed documents obtained through the *Cosentino* litigation could be used in the underlying lawsuit.  Plaintiffs' counsel does not include any fees incurred during the collective action period, although some amount of these fees would arguably be recoverable in this action. *See* 29 U.S.C. § 216 (allowing reasonable attorneys' fees to be paid).

Plaintiffs' Counsel entered into an agreement with Plaintiffs, whereby the firm is entitled to 33 1/3% of the total recovery.  Upon recovery, Plaintiffs' counsel is reimbursed for its reasonable out-of-pocket costs incurred to advance and prosecute the litigation.  Plaintiffs' counsel incurred the following out-of-pocket costs in prosecuting the litigation, totaling costs in the amount of $1,841.00:

Filing Fee: $400.00
Service of Complaint: $75.00
*Pro hac vice* fee for Attorney Kevin Dolley: $211.00
Local Counsel Fee: $1,155.00

The case was overseen by Attorney Kevin J. Dolley, who is the Managing Principal of the Law Offices of Kevin J. Dolley, LLC.  Mr. Dolley's practice experience is extensive, and focuses

on representation of clients in FLSA collective actions and wage and hour class litigation, overtime and minimum wage, and employment discrimination, among other practice areas. Beginning in 2012 with the *Cosentino* collective action, Mr. Dolley has diligently pursued wage and hour cases on behalf of former Transcend employees across the country. Mr. Dolley bills at a rate of $450, which is reasonable rate given his wage and hour specialty and experience. Senior Associate Attorney Mark Obermeyer, who performed some work on the case, bills at a rate of $175, and Associate Attorney Quinton Osborne bills at a rate of $150 per hour. Plaintiffs' counsel spent a total of 74.20 hours on the case representing the Plaintiffs, incurring attorneys' fees in the amount of $12,189.56.[3]

Plaintiffs' counsel's attorneys' fees sought are reasonable. Counsel has extensive litigation background with *Transcend* dating back to 2012, in which counsel uncovered details of how Transcend compensated its employees from 2009 through 2012. Plaintiffs' counsel accepted the case on a contingency fee basis, whereby he took the risk of incurring unpaid legal fees and costs if the litigation was not successful. *See Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (the Court may look to the contingency nature of the FLSA attorneys' fee and the carrying costs counsel faces). The reputation, experience, and specialty of Plaintiffs' firm in wage and hour cases also supports the reasonableness of the lodestar calculation. *See id.* (in determining a reasonable hourly rate, the Court considers the skill, experience, and reputation of the lawyers involved).

---

[3] Plaintiffs' counsel's costs and attorneys' fees requested in this case ($300 total) are requested as part of approval of a global settlement entered between Defendant, Plaintiffs' counsel, and pending medical transcriptionists' claims. Because this settlement is part of a global settlement satisfying ten other lawsuits, the attorneys' fees and costs for this particular settlement are lower than otherwise may be expected because sufficient fees were obtained via other settlements in the global group. The global settlement resolves the instant lawsuit and ten similar lawsuits against Transcend throughout the United States. Plaintiffs' counsel will recover attorneys' fees incurred in the instant matter as a part of the allocation of the global settlement. The allocation of attorneys' fees does not impact the Plaintiffs' respective recovery as contained in the settlement agreement.

Moreover, Plaintiffs' counsel was able to efficiently handle the case by staffing associate attorneys on tasks that were so delegable. *See Silva v. Miller*, 547 F. Supp. 2d 1299, 1306 (S.D. Fla. 2008) *aff'd*, 307 F. App'x 349 (11th Cir. 2009) (unpublished).  Therefore, the lodestar factors support that Plaintiffs' attorneys' fees amount is reasonable.

The Parties voluntarily agreed to the terms of their settlement during negotiations. The Parties were advised and represented by counsel throughout the litigation and settlement process.

### III.    CONCLUSION

The Parties jointly and respectfully request this Court approve the Settlement Agreement, and dismiss this action with prejudice.

Dated: August 2, 2016

Respectfully submitted,

*/s Kevin J. Dolley*
Kevin J. Dolley
kevin@dolleylaw.com
LAW OFFICES OF KEVIN J.
DOLLEY, LLC
2726 S. Brentwood Blvd
St. Louis, MO 63144

Patricia S. Bellac, Esq.
psb@psblawfirm.com
PATRICIA S. BELLAC
LAW FIRM, LLC
4845 Pearl East Circle, Suite 101
Boulder, CO 80301

Attorneys for Plaintiff

*s/ Dustin M. Dow*
Gregory V. Mersol
Dustin M. Dow
**BAKER & HOSTETLER LLP**
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740
gmersol@bakerlaw.com
ddow@bakerlaw.com

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on August 2, 2016, I electronically filed the foregoing with the Clerk of this Court using the ECF system, which will send a notice of electronic filing to the following:

Gregory V. Mersol
Dustin M. Dow
**BAKER & HOSTETLER LLP**
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone:  (216) 621-0200
Facsimile:  (216) 696-0740
gmersol@bakerlaw.com
ddow@bakerlaw.com

*/s/ Kevin J. Dolley*_____
Counsel for Plaintiffs